# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| LEROY CRAWFORD, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08 C 4414 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | Magistrate Judge Morton Denlow |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Leroy Crawford, Jr. ("Claimant") seeks reversal or remand of the decision by Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner" or "Defendant"), denying Claimant's application for Disability Insurance Benefits ("DIB"). This case presents the following issues: (1) whether substantial evidence supports the Administrative Law Judge's ("ALJ") decision that the Claimant is not disabled; (2) whether the ALJ made a proper credibility determination; (3) whether the ALJ properly determined Claimant's residual functional capacity ("RFC"); and (4) whether the ALJ erred in considering testimony from the Vocational Expert ("VE") by allegedly failing to solicit an explanation for inconsistencies between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). For the following reasons, the Court denies Claimant's motion

for summary judgment and grants the Commissioner's motion to affirm the Commissioner's decision that Claimant was not disabled.

## I. BACKGROUND FACTS

### A.    Procedural History

Claimant initially applied for DIB on January 5, 2005, alleging a disability onset date of September 29, 2004.  R. 70-72.  The Social Security Administration ("SSA") denied his application on March 22, 2006.  R. 39-43.  Claimant then filed a request for reconsideration, which was denied on June 21, 2006.  R. 44-48.  Subsequently, Claimant requested a hearing before an ALJ.  R. 49.

On May 22, 2007, Administrative Law Judge Edward B. Pappert presided over the hearing at which Claimant appeared with his attorney.  R. 1-30.  On August 30, 2007, the ALJ issued a decision finding Claimant was not disabled and thus not entitled to DIB.  R. 209-218.  Specifically, the ALJ found Claimant has the RFC to perform light work, 2100 "light" dishwasher positions exist in the nine northeastern Illinois counties, and Claimant therefore is capable of performing his past relevant work as a dishwasher.  R. 214-218.

On October 23, 2007, Claimant filed a request for review of the ALJ's decision, which the Appeals Council denied on July 18, 2008.  R. 31-33, 205-208.  The ALJ's decision therefore became the final decision of the Commissioner.  Claimant subsequently filed this action for review pursuant to 42 U.S.C.§ 405(g).


### B.    Hearing Testimony - May 22, 2007

### 1.     Leroy Crawford, Jr. - Claimant

As of the hearing, Claimant was forty-nine years old, single, and living alone. R. 6. He attended two years of college and received a certificate of music. R. 9. He does not have a driver's license and relies on either friends or public transportation for travel. *Id*. His past relevant work experience consists almost exclusively of dishwashing, with a small amount of experience as a line cook. R. 7-8.

Claimant initially injured his back on September 29, 2004. R. 10-11. X-rays obtained after the injury indicated degenerative disc disease. R. 11. Claimant testified he did not work between September 2004 and August 2005 because his "lower back was really hurting." R. 12. During the months following his September 2004 injury, he visited a chiropractor three times per week, after which he felt some relief. *Id*. In August 2005, Claimant returned to work, but after his knee gave out in January 2006, he stopped working and has not worked since. R. 12-13.

In early 2007, under the care of Dr. Bhojwani, Claimant underwent x-rays of his knees and back, and an MRI of his brain. R. 13. Claimant's MRI results were normal except for sinus inflamation. R. 14. He testified his headaches began in 2004. R. 13. He stated the headaches occur every day and last all day. R. 17. At one time he used Tylenol to relieve the headaches, but it did not help and he now takes no medication. R. 17-18. He can generally function with a headache, but approximately one day per week his headaches leave him unable to function for up to an entire day. R. 20-21. During the hearing, Claimant stated his head hurt and he could not concentrate. R. 21.

Claimant experiences his headaches near his temple and about once a week he feels as though he is going to pass out.  R. 14.  He stated that he did pass out once, approximately two weeks prior to the hearing, but there were no witnesses to the incident.  *Id*.  When questioned by the ALJ, he offered contradictory testimony.  R. 15.  When the ALJ asked Claimant how it was possible that he passed out only once, two weeks ago, but told Dr. Bhojwani about it three months ago, Claimant stated that his passing out "may have been longer than that ago."  *Id*.

Claimant stated his sleep is restless, he awakens because of pain and anxiety.  R. 22.  He also stated it has been a long time since he has been able to concentrate on something and, in the last three years, the longest he remembers being able to concentrate is for three hours while writing a song.  R. 23.

During the day he sometimes goes shopping, reads music, plays the keyboard, or watches T.V. until his headaches cause him to stop.  R. 17.  Claimant leaves his home approximately three times per week.  R. 17.  He sometimes takes the bus to see his case worker for general assistance; he walks about three blocks to the train to go to the grocery store.  R. 18-19.  His lower back and knees make walking difficult and, although both knees are weak, his right knee gives out most frequently due to an injury for which he had surgery in 1989.  R. 19.

Depending on the pain, some days Claimant cannot get up and must stay home.  R. 21.  He testified that if he had a job, there would be days it would be difficult or impossible to go to work because of his pain or headaches.  *Id*.  Claimant speculated that his back and

headaches might cause him to miss work three or four days in a typical month.  R. 21-22.

Claimant states he is not receiving treatment for his back and knees due to lack of finances.  R. 23.  In response to this exchange, the ALJ asked Claimant why he does not go to Cook County Hospital ("CCH").  R. 24.  Claimant replied he was "told now that they charge you."  *Id*.  The ALJ suggested it would not hurt for Claimant to go find out, to which Claimant agreed.  *Id*.

### 2.    James J. Radke - Vocational Expert (VE)

Vocational expert James J. Radke reviewed Claimant's file and was present at the hearing.  R. 3, 24-29.  The VE began his testimony by discussing Claimant's work history. He testified that dishwashing positions are generally medium and unskilled, and line cook positions are typically light and semi-skilled, without transferrable skills.  R. 25-26.

The ALJ asked the VE hypothetical questions about the type of work a person with Claimant's limitations would be able to perform.  R. 26-28.  Initially, the ALJ asked the VE to assume an individual of Claimant's age, education, and relevant work history who was unable to lift and carry more than 50 pounds occasionally and 25 pounds frequently, and was unable to maintain the attention and concentration necessary for any detailed or complex tasks.  R. 26.  The VE concluded such an individual could perform Claimant's past dishwashing position, but likely could not perform the line cook position.  *Id*.

The VE was then asked to assume an individual limited to carrying not more than 20 pounds occasionally and 10 pounds frequently, unable to perform postural movements such as stooping, crouching, crawling and kneeling more than occasionally, and unable to perform

detailed or complex tasks. *Id.* The VE again concluded such an individual could perform a job as a dishwasher, but not as a line cook. R. 27.

The ALJ then asked the VE about the availability of light dishwashing positions. *Id.* The VE testified his statistics show one third of dishwashing positions are performed at the light level, and 2100 such positions exist in the nine county northeastern Illinois area.[1] *Id.*

Finally, the ALJ asked whether the hypothetical individual could perform Claimant's past work if he were limited to standing and walking no more than two hours in an eight hour day, and lifting or carrying no more than 10 pounds occasionally and lesser amounts frequently. The VE concluded an individual with these limitations could not perform Claimant's past work. When asked whether other work existed for such a claimant, the VE stated that, in the nine county northeastern Illinois area, there are approximately 3,700 receptionist positions at the sedentary, unskilled level, 2,100 general office clerk positions, and 900 order clerk positions. *Id.*

Claimant's counsel then asked the VE about the acceptable rate of absenteeism for these positions. R. 28. The VE testified that an acceptable number of absences was less than one day per month or nine days per year, that this would also apply to "light" dishwashing positions. *Id.* When questioned about the effect of a weekly unscheduled one to two-hour work break, the VE stated that such a need would be incompatible with competitive

---

[1] There appears to be a typographical error in the hearing transcript. Whenever the VE refers to the nine county northeastern Illinois area, the reporter wrote "not counting northeastern Illinois area." R. 27. The ALJ, who was present at the hearing, wrote in his decision that the VE testified to light dishwashing positions available in the nine county northeastern Illinois area and this Court has no reason to find differently. R. 218.

employment.  *Id.*  The VE also indicated an individual's inability to concentrate at work could have a significant impact on his ability to perform these jobs.  R. 29.

## C.   Medical Evidence

### 1.   Initial Chiropractic Treatment and X-rays.

The only treatment notes of record were made by a chiropractor in April 2004 following a work accident by Plaintiff.  R. 197-203.  This was five months before the alleged onset of disability in September 2004.   In October 2004, Dr. Douglas M. Gregorson, a chiropractor, interpreted X-rays of Claimant's spine.  He found "minor" spondylosis,[2] "minor sacroiliac joint arthritis," and what "appears to be a degree of degenerative disc disease at L3-L4, even though there is not gross loss of disc space."  R. 186.

---

[2] Spondylosis is "ankylosis of the vertebra; often applied nonspecifically to any lesion of the spine of a degenerative nature."  Stedman's Medical Dictionary (27th ed. 2000).

### 2. Dr. Barry Lake Fischer, M.D. – Independent Medical Examiner

In March 2005, Claimant received a medical evaluation from Dr. Barry Lake Fischer ("Dr. Fischer") following a slip and fall at work. R. 153-156. Claimant complained of pain, soreness and stiffness in his lower back, but his neck had improved. R. 154. Dr. Fischer noted Claimant's lower back showed no visible deformities, but he had limited range of motion in his lumbar spine. *Id*. An X-ray revealed well-maintained lumbar disc spaces and no evidence of fracture or dislocation. R. 155. Dr. Fischer's diagnosis was that Claimant had "sustained a lumbosacral strain injury with limited range of motion of his lumbar spine in flexion, extension, and lateral bending" and "straight leg raising is limited bilaterally more so in the right indicating lumbar nerve root irritation." *Id*. He concluded Claimant's injuries resulted in "moderate industrial loss to [his] person as a whole." *Id*.

### 3. Scott A. Kale, M.D. ("Dr. Kale") – Internal Medicine Consultative Examiner

On March 1, 2006, Claimant received a complete examination from Dr. Kale, an internist, at the request of the State Agency. R. 157-160. Claimant reported to Dr. Kale a long history of neck and low back pain, and a history of knee pain making him unable to stand or walk for long periods of time. R. 157 Although Claimant walks with a limp, he does not require a cane and does not experience collapse of his legs. *Id*. Claimant reported no additional medical problems. *Id*. There was no mention of headaches.

Dr. Kale found that Claimant had a normal range of motion in his cervical spine, knees, ankles, shoulders, elbows, wrists, and fingers despite Claimant's considerable grimacing, moaning and groaning. R. 159. Dr. Kale remarked that Claimant's "gait [was]

antalgic in a bizarre way with a combination of mild shuffling and moaning and groaning which is most un-anatomic insofar as his hips and knee examinations are unremarkable." *Id.*

Dr. Kale also performed neurological and mental status examinations without finding abnormalities. *Id.* Claimant agreed all medical complaints had been addressed during the examination. R. 160. Dr. Kale's clinical impression was that Claimant has an "[u]nconvincing history of low back and neck pain with a grotesque walk pattern not related to an anatomical abnormality." *Id.*

### 4. Dominic Gaziano, M.D. ("Dr. Gaziano") – Consultative Examiner for Illinois Department of Human Services

On April 3, 2006, Claimant was examined by Dr. Gaziano. R. 172-178. Dr. Gaziano went through Claimant's various systems and recorded no objective abnormalities, except for a slightly reduced back range of motion, a limp, and a scar. *Id.* Claimant told Dr. Gaziano his headaches occur about every other day, can last from two hours to all day, and that he takes ibuprofen for the pain. R. 177. He also reported that once he passed out. *Id.* The remainder of Dr. Gaziano's evaluation is memorialized in several checklist type sheets, where he opined Claimant could lift no more than ten pounds at a time, was twenty to fifty percent "reduced" in other physical abilities, and had moderate mental limitations. R. 175.

### 5. Dr. Charles Kenney, M.D. ("Dr. Kenney") and Dr. E.W. Donelan, M.D. ("Dr. Donelan") – State Agency Physicians

On March 10, 2006, Dr. Kenney, a State Agency physician, examined Claimant's medical records and concluded he was able to lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; he could sit, stand and/or walk about six hours in an eight-

hour work day; and had no other limitations. R. 162-168. Dr. Kenney concluded Dr. Kale's consultative evaluation was credible and agreed Claimant's symptoms are exaggerated. R. 168. On June 19, 2006, Dr. Donelan affirmed Dr. Kenney's conclusions after reviewing Claimant's medical records, including Dr. Gaziano's April 2006 evaluation. R. 179-80.

### 6.    Dr. Arun Bhojwani, M.D. ("Dr. Bhojwani")

Claimant's last medical visits of record were to Dr. Bhojwani, who ordered an MRI of Claimant's brain in February 2007, and X-rays of Claimant's spine and knees in May 2007. R. 190-192. Claimant's MRI indicated symptoms consistent with sinus inflammatory disease, and his back X-ray indicated "very minimal/early degenerative changes in the lumbosacral spine." *Id.* Claimant's knee X-rays showed an "essentially unremarkable" right knee, "with the exception of coiled metallic foreign body within the medial thigh tissue." *Id*.

### D.    The ALJ's Decision

Following a hearing and review of the evidence, the ALJ rendered a decision denying Claimant's application for DIB. R. 209-220. The ALJ reviewed Claimant's application under the familiar five-step sequential analysis. R. 212-214. *See infra*, Part II.B (Disability Standard). At step one, the ALJ found Claimant had not engaged in substantial gainful activity since September 29, 2004, Claimant's alleged disability onset date.[3] R. 214. At step two, the ALJ found the combination of Claimant's lumbar degenerative disc disease, knee pain and headaches to be a severe impairment. *Id.* At step three, the ALJ found Claimant

---

[3] Claimant's employment from August 2005 to January 2006 was determined to have been an unsuccessful work attempt. R. 214.

did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* The ALJ went on to assess Claimant's RFC, finding Claimant has the RFC to perform light work (i.e. lifting twenty pounds occasionally or ten pounds frequently; and sitting, standing and/or walking for six hours in an eight hour day) except for no more than occasional postural movements such as stooping, crouching, crawling and kneeling. R. 214-15. In assessing Claimant's RFC, the ALJ found Claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms but did not find Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms to be entirely credible. R. 215. At step four, the ALJ found Claimant capable of performing his past relevant work as a dishwasher, stating that the work does not require performance of activities precluded by Claimant's RFC. R. 218. Finally, the ALJ concluded Claimant was not under a disability from September 29, 2004, through August 30, 2007, the date of the ALJ's decision. *Id.*

## II. LEGAL STANDARDS

### A.     Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is

substantial evidence in the record to support the findings. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (quoting *Perales*, 402 U.S. at 401). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge between the evidence and the result." *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (quoting *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting *Lopez*, 336 F.3d at 539). It may not, however, re-evaluate the facts, "re-weigh [the] evidence . . . or substitute [its] own judgment for that of the Commissioner." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence to support the findings. *Id*. at 368-69. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## B. Disability Standard

Disability insurance benefits ("DIB") are available to a claimant who can establish "disability" under the terms of Title II of the Social Security Act. *Rice*, 384 F.3d at 365. An individual is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(a)(1)(E). An individual is under a disability if he is unable to do his previous work and cannot, considering his age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

To make this determination, one must employ a five-step sequential analysis. 20 C.F.R. § 404.1520(a)-(f). Under this process, the ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work in the national economy. *White v. Barnhart*, 415 F.3d 654, 657 (7th Cir. 2005). If the claimant has proven he cannot continue his past relevant work because of physical limitations, the ALJ carries the burden to show that other jobs which Claimant can perform exist in the economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

# III. DISCUSSION

This case presents the following issues: (1) whether substantial evidence supports the ALJ's decision that Claimant is not disabled; (2) whether the ALJ made a proper credibility determination; (3) whether the ALJ properly determined Claimant's RFC; and (4) whether the ALJ erred in considering testimony from the VE by allegedly failing to solicit an explanation for inconsistencies between the VE's testimony and the DOT.

## A.    Substantial Evidence Supports the ALJ's Determination That Claimant was Not Disabled.

Substantial medical evidence supports the ALJ's decision that Claimant was not disabled and had the RFC for light work.[4]

In March 2005, Dr. Fischer concluded Claimant's work related injuries resulted in only "moderate industrial loss to his person as a whole." R. 155. Dr. Fischer did not indicate Claimant was unable to work, nor did he provide specific limitations on his ability to work.

One year later, in March 2006, Dr. Kale, an internist, examined Claimant at the request of the State. After a detailed and well-documented examination, Dr. Kale's clinical impression was that Claimant had an "unconvincing history of low back and neck pain with

---

[4] Light work is work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

a grotesque walk pattern not related to an anatomical abnormality." R. 160. Dr. Kale did not indicate that Claimant was unable to work or that he was limited in his ability to work.

In March 2006, Dr. Kenney, a State Agency physician, concluded Claimant was able to perform the exertional requirements of medium work. Dr. Kenney further concluded Dr. Kale's consultative evaluation is credible and agreed that Claimant's symptoms are exaggerated. R. 168.

In April 2006, Claimant visited Dr. Gaziano, a consultative examiner for the Illinois Department of Human Services. Dr. Gaziano's evaluation consisted of several checklist-like sheets on which he essentially indicated Claimant was disabled. However, Dr. Gaziano's narrative report provides no objective medical basis for these findings.

In early 2007, Claimant underwent X-rays of his spine and knees and an MRI of his brain. The spine X-ray indicated only very early/minimal degenerative changes in the lumbosacral spine, and his knee X-rays were "essentially unremarkable." R. 190.

The medical evidence, taken as a whole, indicates a common finding among doctors that Claimant could perform medium, and thus light work.[5] Only Dr. Gaziano's evaluation and opinion suggests a greater level of limitation, but the ALJ rejected Dr. Gaziano's opinion because it was not based on objective medical evidence.

All four of the remaining doctors, comprised of two examining doctors and two State Agency physicians, either did not indicate a limitation on Claimant's ability to work, or

---

[5] Medium work is work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work . . . he or she can also do sedentary and light work." C.F.R. § 404.1567(c).

found Claimant was able to perform work activities at the medium level. The ALJ, after considering all of the evidence, including Claimant's testimony regarding the severity of his symptoms, determined Claimant's RFC to be at the light level, rather than the medium level.

Claimant argues the ALJ failed to account for his headaches in his RFC calculation, but Claimant provided no medical evidence to indicate the headaches impact his ability to work at a light level. In fact, the record contains significant evidence indicating the headaches are not nearly as severe as Claimant now suggests. Claimant failed to mention to two of three examining physicians he suffered from headaches; he gave inconsistent statements as to the frequency and duration of the headaches; he provided conflicting statements regarding an alleged incident of passing out as a result of the headaches; he has not sought treatment for the headaches; and he takes no medication to control the headaches. Therefore, substantial medical evidence supports the ALJ's finding that Claimant was not disabled and could perform light work.

**B.     The ALJ's Credibility Determination Was Not Patently Wrong.**

The Court must accord special deference to the ALJ's credibility determinations because the ALJ "is in the best position to see and hear the witness and determine credibility." *Shramek*, 226 F.3d at 811. This deference may be tempered "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations such as a claimant's demeanor." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). A reviewing court will overturn an ALJ's adverse credibility determination if it is patently wrong. *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). An ALJ is "not

obliged to believe all [of a claimant's] testimony. Applicants for disability benefits have an incentive to exaggerate their symptoms, and an administrative law judge is free to discount the applicant's testimony on the basis of the other evidence in the case." *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006). An ALJ's determination regarding a Claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, at *2.

Here, the ALJ determined "claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." R. 216. The ALJ discussed multiple factors contributing to his finding, including Claimant's failure to seek treatment, the manner in which Claimant testified, and the sparse medical evidence supporting Claimant's alleged symptoms. R. 216-17. The ALJ also noted Claimant "takes no medication of any kind, uses public transportation when necessary, and walks three blocks from the elevated train to the grocery store." R. 217.

1.    **The ALJ Properly Solicited and Considered Claimant's Explanation for His Failure to Seek Treatment.**

Claimant argues the ALJ improperly discounted Claimant's explanation for failing to seek treatment. Specifically, Claimant argues the ALJ ignored his explanation of financial hardship because Claimant did not seek treatment at Cook County Hospital and because he did not apply for Supplemental Security Income ("SSI"). The Commissioner asserts the ALJ's rejection of Claimant's explanation was reasonable in light of the circumstances and the ALJ's observations. This Court finds the ALJ properly considered Claimant's explanation for not seeking medical treatment.

One type of evidence the ALJ may consider in assessing a Claimant's credibility is the treatment he received for relief of pain or other symptoms. SSR 96-7p. Failure to obtain treatment can support an adverse credibility finding where the claimant does not have a good reason for not seeking treatment. *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). However, in order to draw an inference about a claimant's condition, an ALJ must first consider the claimant's explanation for not seeking treatment. *Id.* "An inability to afford treatment is one reason that can provide insight into the individual's credibility." *Id.*

During the May 22, 2007 hearing, Claimant testified he did not seek treatment for his allegedly disabling condition because of "lack of finances." R. 23. The ALJ asked Claimant why he did not visit Cook County Hospital ("CCH") for treatment, to which Claimant responded that he "was told now that they charge you." R. 24. Claimant contends both that the ALJ improperly assumed Claimant had knowledge of CCH's services and conversely that

the ALJ improperly ignored evidence that he did seek treatment at CCH. The record contains evidence of two past visits by Claimant to CCH; the first in 1990, and the second in April 2006. R. 129, 142.

The fact that Claimant visited CCH in 2006, well after the date of his injury, creates a reasonable inference that Claimant was in fact familiar with the Hospital's services and leaves this Court unconvinced by Claimant's argument that the ALJ improperly assumed that Claimant knew he could receive treatment there.[6] Further, Claimant's failure to contact CCH to find out if the Hospital had begun charging for services to indigent persons further suggests that Claimant's symptoms are not severe.

## 2. The ALJ's Credibility Assessment is Further Supported by His Observations of Claimant's Testimony and Objective Medical Evidence.

Although the ALJ based his credibility assessment in part on Claimant's failure to seek treatment, the ALJ also considered the manner in which Claimant testified, Claimant's statements, and the objective medical evidence contained in the record. Specifically, the ALJ stated "neither the claimant nor what little medical evidence was submitted was very convincing." R. 217. To support his finding, the ALJ discussed the objective medical evidence, Claimant's testimony that he takes no medication for his pain, and Claimant's disingenuous and equivocating responses during his testimony.

---

[6] Claimant also suggests the ALJ improperly relied on his own knowledge of CCH's services, citing *Woolridge v. Barnhart*, 2004 WL 2066918 (N.D.Ill. 2004). *Woolridge* is distinguishable from this case because, as Claimant pointed out in his brief, the record contains evidence that Claimant is not only familiar with CCH, but has used its services as recently as 2006. R. 129, 142.

An ALJ may disregard a claimant's assertions of pain if he legitimately finds them not credible. *Schmidt v. Astrue*, 496 F.3d 833, 843-44 (7th Cir. 2007). Moreover, an ALJ may properly discount portions of a claimant's testimony based on discrepancies between Claimant's allegations and objective medical evidence. *Powers v. Apfel*, 207 F.3d 431, 435-36 (7th Cir. 2000) ("The discrepancy between the degree of pain attested to by the witness and that suggested by the medical evidence is probative that the witness may be exaggerating h[is] condition. For the hearing officer to rely on this as evidence of lack of complete candor cannot be deemed patently wrong."); *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005).

Claimant asserts the ALJ erred by not providing examples of his disingenuous or equivocal testimony. While the ALJ did not label specific statements as 'disingenuous,' he articulated the basis for finding disingenuous Claimant's testimony as to the severity of his symptoms. Specifically, he discussed each of Claimant's medical evaluations, including Dr. Kale's opinion that Claimant's symptoms are exaggerated, and concluded the objective medical evidence did not support the severity of symptoms to which Claimant testified.

Likewise, the ALJ did not specifically discuss the portion of Claimant's testimony in which he 'equivocated' in response to questions regarding the severity of his headaches. The record shows that Claimant made several inconsistent statements during the hearing regarding his alleged incident of passing out, including conflicting testimony regarding when the incident occurred and whether he reported the incident to a doctor. R. 14-15.

Even if the ALJ's pronouncement that Claimant was disingenuous in his responses and then equivocated when confronted with those responses existed as his only stated basis for finding Claimant not credible, the Seventh Circuit has held that where an ALJ's credibility determination has evidentiary support, it is not patently wrong. *See Jens*, 347 F.3d at 213-14 (where the ALJ's credibility determination was supported by evidence in the record, it was not patently wrong even though the ALJ did not specify which of claimant's statements were not credible, nor provide evidentiary support in his decision).

The record contains ample additional evidence to support the ALJ's credibility finding. Claimant received three separate medical evaluations for which there is documentation in the record. However, Claimant only complained of headaches to one of the three examining physicians. The ALJ noted Claimant told Dr. Gaziano during his April 2006 examination that his "headaches occur about every other day, and can last from two hours to all day." R. 177. At his hearing, Claimant testified his headaches occur everyday and last all day, and about once per week they leave him unable to function. Claimant's testimony is not only inconsistent with what he reported to Dr. Gaziano, but is notably inconsistent with his failure to report the headaches to the two other examining physicians. Here, the ALJ supported his credibility determination with substantial evidence from the record and therefore it is not patently wrong.

**D. The ALJ Properly Determined Claimant's RFC.**

Residual functional capacity ("RFC") is the most a claimant can still do to perform work activities despite the limitations from all of his impairments and related symptoms. 20 C.F.R. 404.1545(a). In determining a claimant's RFC, an "ALJ must consider whether there is an underlying 'determinable physical or mental impairment that could reasonably be expected to produce the symptoms.'" *Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004) (quoting SSR 96-97p). Here, the ALJ determined Claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms. R. 216. Having made that determination, the ALJ's next step is to analyze the "intensity, persistence, and functionally limiting effects of the symptoms" to determine whether the symptoms "affect the individual's ability to do basic work activities." SSR 96-97p.

Claimant attacks the ALJ's RFC analysis on several grounds. First, Claimant argues the ALJ failed to articulate reasons for rejecting Dr. Gaziano's functional capacity assessment. Second, Claimant argues the ALJ failed to build a logical bridge between the facts and his finding that Claimant could perform light work. Third, Claimant argues the ALJ failed to consider the effect of Claimant's headaches in his RFC assessment.

Claimant's first argument, that the ALJ failed to articulate reasons for rejecting Dr. Gaziano's RFC assessment, is without merit. "[M]edical opinions upon which an ALJ should rely need to be based upon objective observations and not amount merely to a recitation of a claimant's subjective complaints." *Rice*, 384 F.3d at 370-71; *see also Zblewski v. Astrue*, 302 F.App'x 488, 493 (7th Cir. 2008) ("Because the ALJ pointed to medical

evidence that was inconsistent or insufficiently objective, the ALJ provided the 'good reasons' required for discounting [the doctor's] testimony.")

Here, the ALJ not only addressed Dr. Gaziano's opinion, but also explained his reasoning. Specifically, the ALJ stated the doctor's "opinion is not substantiated by other evidence of record, nor did the examination reveal a basis for the doctor's assessment of limitations in such areas as social functioning or concentration, persistence or pace." R. 217. The ALJ properly discounted Dr. Gaziano's opinion because it is not well supported by objective medical evidence, as contrasted with the examinations of Dr. Fischer and Dr. Kale.

Second, Claimant argues the ALJ failed to build a logical bridge between the facts and his finding that Claimant could perform light work. He asserts the ALJ did not have a proper basis for finding Claimant could perform light work, where one physician opinion found Claimant essentially disabled, and two others indicated he could perform medium work.

An "ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians" in making an RFC determination. *Schmidt*, 496 F.3d at 845. Here, the ALJ properly rejected Dr. Gaziano's opinion. The other two examining physicians did not indicate any limitations on Claimant's ability to work, and two State Agency physicians found Claimant capable of performing medium level work.

Although the ALJ did not find Claimant to be "entirely credible," he gave Claimant some credit for his alleged symptoms when, despite medical opinions that he could perform medium work, the ALJ nevertheless determined Claimant's RFC to be limited to light work. In fact, the ALJ indicated as much when he stated that "after careful consideration of the objective medical findings, the subjective allegations, and medical opinions, and all other relevant evidence . . . the limitations assessed herein are warranted, but that no further restriction is justified." R. 217. This Court finds the ALJ sufficiently articulated his reasons for finding Claimant has the RFC to perform light work.

Third, Claimant argues the ALJ failed to consider the effect of Claimant's headaches in his RFC assessment. He asserts it is inconsistent for the ALJ to find his headaches to be a severe impairment at step two, but fail to determine their effect on his RFC. The Commissioner argues the ALJ reasonably considered Claimant's headaches. Claimant further argues the ALJ erred by not determining what effect Claimant's inability to concentrate, weekly inability to function, and absences from work would have on his work ability.

Although the ALJ found Claimant's headaches to be a severe impairment and recognized they would have some impact on his ability to work, the ALJ found Claimant's testimony regarding the severity of his symptoms not credible. While the ALJ did not expressly discount every symptom alleged by Claimant regarding his headaches, the reasons he articulated are supported by the evidence of record. Specifically, Claimant failed to mention headaches to two of three examining physicians, gave inconsistent statements as to

the frequency and duration of the headaches, provided conflicting accounts of an alleged incident of passing out, has not sought treatment, and takes no medication.

Claimant's only medical evidence to support his alleged headaches is an MRI report which shows symptoms consistent with sinus inflammatory disease.[7] These results provide a basis for the ALJ's finding at step two that Claimant suffers from headaches, but do not necessarily support finding the headaches cause symptoms as alleged by Claimant.

Claimant also argues the ALJ ignored the VE's testimony concerning how Claimant's headaches would impair his concentration or ability to adhere to a full-time work schedule. While the ALJ included these characteristics in his hypothetical questions to the VE, the ALJ did not ultimately find any limitations on Claimant's concentration or ability to adhere to a full-time schedule.[8]

Under the substantial evidence standard, an ALJ need only "minimally articulate" his reasoning. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). While the ALJ may not have engaged in as detailed a discussion as was supported by the record, he better than minimally

---

[7] Claimant cites *Look v. Heckler*, 775 F.2d 192, 195-96 (7th Cir. 1985) and *Indoranto v. Barnhart*, 374 F.3d 470, 473-74 (7th Cir. 2004) for the proposition that "headaches and the limitations that they cause must be considered in assessing a claimant's work capacity." Pl.'s Reply Br. at 2. However, in both cases the symptoms were supported by medical opinion, and in *Look*, the plaintiff had a history of taking prescription medication for the headaches. Here, Claimant takes no medication and the extent of his medical evidence is an MRI resulting in relatively normal findings. This Court finds it was reasonable for the ALJ to find Claimant's symptoms of sinus inflammatory disease provided a medical basis for his headaches, but was insufficient to find Claimant's complaints credible regarding the severity of his symptoms.

[8] Similarly, although the ALJ questioned the VE regarding employment capabilities of an individual limited to carrying 10 pounds frequently, lesser amounts more frequently, and standing and walking only two hours in an eight hour day, the ALJ did not find Claimant as limited as the hypothetical individual.

articulated reasons for his findings and the record supports his conclusion. Therefore, this Court finds the ALJ properly determined that Claimant has the RFC for light work.

**C.     The ALJ Properly Relied on the VE's Testimony.**

At step four of his analysis, the ALJ relied on the VE's testimony that one-third of dishwashing positions are performed at the "light" level and 2100 such positions are available for an individual with Claimant's RFC. Claimant argues the ALJ erred in relying on the VE's testimony for three reasons. First, Claimant argues the testimony conflicts with the DOT and the ALJ failed to properly solicit an explanation pursuant to Social Security Ruling ("SSR") 00-4p. Second, Claimant argues the ALJ erred by not asking the VE where he obtained his statistical data. Third, Claimant argues the ALJ erred by failing to compare Claimant's RFC to the specific demands of his past job as a dishwasher.

**1.     The ALJ Properly Questioned the VE Regarding Alleged Inconsistencies with the DOT and Committed No Error by Relying on the VE's Testimony.**

Claimant argues the ALJ erred in finding he could perform his past job as a dishwasher because his RFC for light work conflicts with the DOT which states that dishwashing jobs are generally performed at the medium level. He further argues the ALJ did not properly ask the VE about inconsistencies between the VE's testimony and the DOT, nor explain in his decision the resolution of conflict between the VE's testimony and the DOT as required by SSR 00-4p.

An ALJ "*has an affirmative responsibility* to ask about any possible conflict between [VE] evidence and information provided in the DOT." *Prochaska v. Barnhart*, 454 F.3d 731,

735 (7th Cir. 2006) (emphasis in original).  This duty requires the ALJ to ask the VE if the evidence he has provided conflicts with the DOT.  *Id.*  If there is an apparent unresolved conflict the ALJ must obtain a reasonable explanation for the apparent conflict.  *Id.*

Here, although the ALJ made the required inquiry, Claimant argues it was made too soon and did not cover the VE's entire testimony.  At the outset, the ALJ asked the VE to describe Claimant's past work.  R. 25.  The VE testified dishwashing is generally an unskilled, medium level position and that Claimant's prior work as a dishwasher is consistent with that description.  R. 25-26.  The ALJ then asked the VE if his "opinion [was] based upon and consistent with the DOT and the SCL," to which the VE replied it was.  *Id.*

The ALJ next posed to the VE several hypotheticals, one of which included all of the limitations included in Claimant's RFC.  R. 26-27.[9]  Specifically, the ALJ asked whether the hypothetical individual with Claimant's RFC limitations could perform the past work either as Claimant had performed it "*or as it's otherwise performed*."  R. 26 (emphasis added).

Following this question, the ALJ asked the VE whether there were a significant number of "light" dishwashing jobs.  R. 27.  The VE stated that based on his statistics, approximately one third of dishwashing jobs are performed at the "light" level, and that 2100 such positions were available in the northeastern Illinois regional economy.  Claimant argues the VE's testimony was inconsistent with the DOT, and that the ALJ should have sought a

_____

[9] The question included a further limitation against performing detailed or complex tasks, but the ALJ did not include this limitation in Claimant's RFC.

reasonable explanation. Claimant further argues the VE's unidentified sources of vocational information should not override the detailed vocational information provided in the DOT.

However, the information in the DOT regarding dishwashers is limited. The DOT contains no description for "dishwasher," but includes the activity of washing dishes among the vast and varied duties of many positions generally categorized under "kitchen helper." *See* DOT § 318.687-010. SSR 00-4p provides that the "DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00-4p. Additionally, neither the DOT nor the VE automatically trumps when there is a conflict. *Id.* Rather, the ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE's testimony rather than the DOT. *Id.*

Given that "kitchen helper" covers numerous jobs, the VE's testimony provides additional information rather than conflicting information regarding dishwashing jobs. The VE's testimony does not conflict with the DOT insofar as dishwashing positions are *generally* classified as medium. The VE simply provided supplemental information at the request of the ALJ as to the number of "light" dishwashing positions available. This testimony is consistent with SSR 00-4p, which provides that "a [VE] or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT."

### 2. The ALJ Was Not Required to Verify the Source of the VE's Statistical Data.

Claimant next argues the ALJ erred by not asking the VE for the source of his statistical data. The Commissioner contends it was the duty of Claimant's attorney, not the ALJ, to solicit the source of the VE's data. This Court agrees.

The ALJ had no duty to inquire as to the source of the VE's statistical data. When a claimant's attorney does "not question the basis for the vocational expert's testimony, purely conclusional though that testimony was, any objection is forfeited." *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004); *see also Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) ("When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the [DOT]...."). The law is clear that "[r]aising a discrepancy only after the hearing . . . is too late." *Donahue*, 279 F.3d at 447. Because Claimant's attorney did not challenge the VE's statistical information at the hearing, he may not do so here.

### 3. The ALJ Properly Determined Claimant Could Return to His Past Work.

Claimant argues the ALJ erred by failing to compare his RFC to the physical demands of his past job as a dishwasher. Specifically, he argues the ALJ's RFC finding that Claimant can only occasionally crouch and stoop is inconsistent with the DOT's description of "kitchen helper," which states that a person must be able to crouch and stoop frequently in.

In support of his argument, Claimant cites *Strittmatter v. Schweiker*, 729 F.2d 507, 509 (7th Cir. 1984), *Nolan v. Sullivan*, 939 F.2d 516, 518-19 (7th Cir. 1991), and *Smith v. Barnhart*, 388 F.3d 251, 252-53 (7th Cir. 2004). He argues that, like the ALJ in these three

cases, the ALJ in Claimant's case did not compare his RFC to the specific demands of his past work. Specifically, he argues Claimant's past work was at the medium level and required frequent stooping and crouching, which should have been compared against Claimant's RFC which limits him to light work and occasional stooping and crouching.

Although a claimant's RFC assessment must be compared with the demands of his past work, a VE may offer evidence within his expertise or knowledge concerning the demands of claimant's past work, "either as the claimant actually performed it *or as generally performed in the national economy*." 20 C.F.R. § 404.1560(b)(2) (emphasis added). Here, the VE testified one-third of dishwashing jobs are performed at the light level.

Moreover, the ALJ posed to the VE a hypothetical question which incorporated all of Claimant's RFC limitations.[10] R. 26. The VE testified Claimant could perform such a dishwashing job and that 2100 such positions exist in northeastern Illinois.

Claimant also argues the VE did not specify *how* a dishwasher job could be performed where a claimant was limited to only occasional activity. However, if Claimant wanted clarification or was not satisfied with the VE's testimony, Claimant had ample opportunity at the hearing to cross-examine the VE. *See Barrett*, 355 F.3d at 1067 (if a claimant's attorney does not question the basis of the VE's testimony, any objection is forfeited).

Based on the evidence of record, this Court concludes the ALJ properly determined Claimant could return to his past work as a dishwasher.

---

[10] Again, the question also included a limitation on ability to perform detailed or complex tasks, but the ALJ did not include this limitation in Claimant's RFC.

# IV. CONCLUSION

This court finds the following: (1) Substantial evidence supports the ALJ's determination that Claimant is not disabled; (2) the ALJ's credibility determination was not patently wrong; (3) the ALJ properly determined Claimant's RFC; and (4) the ALJ properly relied on the VE's testimony. Because the ALJ made a proper determination at step four, there is no need for this Court to discuss the Commissioner's arguments regarding Claimant's ability to perform other work at step five. **For the reasons set forth in this opinion, this Court denies Claimant's motion for summary judgment and grants the Commissioner's motion to affirm the Commissioner's decision that the Claimant was not disabled.**

**SO ORDERED THIS 9th DAY OF JULY 2009.**

*Morton Denlow*
_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies mailed to:**

Barry A. Schultz
The Law Offices of Barry A. Schultz, P.C.
1609 Sherman Avenue, Suite 205
Evanston, IL 60201

Counsel for Plaintiff

Pierre Talbert
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, IL 60604

James E. Hail
Assistant Regional Counsel
200 West Adams Street, Suite 3000
Chicago, IL 60606

Counsel for Defendant